IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MOLLY BERGMAN individually and <br> as natural parent of A.B. and M.B. and <br> MOLLY BERGMAN, as natural guardian of <br> her minor child Plaintiff, A.B. and M.B., <br><br> Plaintiffs, <br><br> v. <br><br> FOREST LABORATORIES, INC. and <br> FOREST PHARMACEUTICALS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 2:14-cv-04325-NKL |

## ORDER

Pending before the Court is Plaintiffs' motion to remand, Doc. 9. Plaintiffs' motion is denied.

### I. Background

Plaintiffs Molly Bergman and her minor children filed this action in the Cole County Circuit Court on November 4, 2014. Plaintiffs allege that Defendants negligently manufactured, marketed, and sold Lexapro, a prescription anti-depressant, and that Bergman's ingestion of Lexapro caused her children to be born with birth defects.

On December 12, 2014, Defendants Forest Laboratories and Forest Pharmaceuticals removed this action on the basis of diversity jurisdiction. Plaintiffs and Defendants agree that Forest Laboratories is incorporated in Delaware with its principal place of business in New Jersey, making it a citizen of both Delaware and New Jersey.

They also agree that Forest Pharmaceuticals is incorporated in Delaware, making it a citizen of Delaware.

Parties dispute Forest Pharmaceuticals' principal place of business. Neither party contests that until at least July 2014, Forest Pharmaceuticals' principal place of business was located at its headquarters in Missouri. However, in July 2014, Actavis purchased Forest Pharmaceuticals. Actavis is headquartered in New Jersey. Defendants contend that after Actavis purchased Forest Pharmaceuticals, Forest Pharmaceuticals began the process of relocating its headquarters to New Jersey. Between July and November, Forest Pharmaceuticals entered into purchase and sales agreements to sell their Missouri property and appointed new officers who worked out of New Jersey. Defendants contend that these actions were sufficient to shift Forest Pharmaceuticals' principal place of business to New Jersey. Plaintiffs argue, however, that as of November 4, 2014 when the complaint was filed, Forest Pharmaceuticals was still being run out of its headquarters in Missouri. Plaintiffs are citizens of Missouri. Therefore, if Forest Pharmaceuticals is a citizen of Missouri, there is no complete diversity under 28 U.S.C. § 1332(c)(1), and the Court lacks subject matter jurisdiction.

**II.     Discussion**

Upon removing an action to federal court, the defendant bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction over the case. *In re Prempro Products Liability Litigation*, 591 F.3d 613, 620 (8th Cir. 2010); *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). "Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved

2

in favor of state court jurisdiction and remand." *Baumgartner v. Ford Motor Credit Co.*, 2007 WL 2026135, at *1 (W.D. Mo. July 9, 2007).

In order to determine whether the Court has subject matter jurisdiction over this action, the Court must decide where Forest Pharmaceuticals' principal place of business was located on November 4, 2014 when Plaintiffs commenced this action in Cole County. *Grupo Dataflux v. Atlas Global Group, L.P., et al.*, 541 U.S. 567, 570 (2004) (noting that a court's jurisdiction depends on the facts as they existed at the time the complaint was filed). In support of their contention that Forest Pharmaceuticals' principal place of business was in Missouri on November 4, 2014, Plaintiffs have submitted three exhibits: (1) screen shots of the Forest Pharmaceuticals website listing the company's principal office as St. Louis as of January 2015; (2) a 2004 Forest Pharmaceuticals Securities and Exchange Commission ("SEC") filing, listing the company's principal place of business in St. Louis; and (3) a 2014 Lexapro warning label listing Forest Pharmaceuticals' address in Missouri.

Defendants submitted a declaration of William Meury, the Vice President of Forest Pharmaceuticals, describing the relocation of the company from Missouri to New Jersey, as well as a document showing that new officers were appointed to the Board of Directors of Forest Pharmaceuticals on October 13, 2014. Following two oral arguments before the Court, Defendants filed a supplemental declaration of Mr. Meury stating that since October 13, 2014, Forest Pharmaceuticals' officers have directed, controlled, and coordinated its activities from New Jersey and have made no decisions from Missouri. [Doc. 30-1]. Defendants also state that prior to November 4, 2014, core business

3

functions and medical information and communication personnel were informed that their functions would be performed at other locations outside of Missouri. The last day the person in charge of medical information and communication in St. Louis reported to work in St. Louis was October 17, 2014. Defendants state that since October 13, 2014, Forest Pharmaceuticals has directed the field sales force from New Jersey. Finally, Defendants note that two Purchase and Sales Agreements for Forest Pharmaceuticals' St. Louis properties, executed in October 2014, directed that all communications regarding the sales be mailed to Forest Pharmaceuticals in New Jersey. Defendants state that the decisions to sell these two properties were made in New Jersey prior to November 4, 2014.

In 2010, the Supreme Court decided *Hertz Corporation v. Friend*, which clarified the test to be applied in determining where a company's principal place of business is located. 559 U.S. 77 (2010). The Supreme Court concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that the Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 92-93. This "nerve center" rule acts to prevent a corporation from being able to change its principal place of business on a whim in response to anticipated litigation.

4

Unlike a company's place of incorporation, which can be changed on a whim, a company must uproot its entire center of direction in order to change its principal place of business.

According to Mr. Meury's declaration, Forest Pharmaceuticals began the process of moving its principal place of business from Missouri to New Jersey after Actavis acquired Forest Pharmaceuticals on July 1, 2014. [Doc. 15-1, p. 2]. On October 13, 2014, the Board of Forest Pharmaceuticals appointed new officers. *Id.* at 3-5. The vast majority of these officers were located in Parsippany, New Jersey at the time of the appointment, and all are located there today. *Id.* at 3. Mr. Meury states that Forest Pharmaceuticals' officers have been directing and controlling the company from New Jersey since October 13, 2014. [Doc. 30-1, p. 1-2]. Some of the actions taken by the Board from New Jersey since October include the decision to transition core business functions from St. Louis to locations elsewhere, the decision to transfer the drug safety department from St. Louis to locations outside of Missouri, direction of field sales force activities, and decisions to enter into purchase and sales agreements to sell its two properties in St. Louis. *Id.* at 1-4.

Plaintiffs have made no arguments regarding the factual assertions in Mr. Meury's declaration regarding the election of the officers, location of the officers, or sale of the St. Louis properties. They do not argue that the company did not appoint new officers in October 2014, that those officers were not located almost exclusively in New Jersey, or that the company had not entered into sales agreements to get rid of its property in St. Louis as of October. They also do not contest the information contained in Mr. Meury's supplemental declaration, which expanded on the content of the Board's decisions and

5

the extent of control exercised by Forest Pharmaceuticals' officers from New Jersey beginning in October 2014.

In lieu of contesting Defendants' factual assertions, Plaintiffs argue that Defendants have failed to meet their burden of proof to show that Forest Pharmaceuticals' principal place of business was in New Jersey in November 2014. As discussed above, Defendants' primary evidence to prove the location of its principal place of business is Mr. Meury's declarations and accompanying documents. Though this evidence is somewhat minimal, declarations such as these, when uncontested, have often been held to be sufficient to establish a company's principal place of business. *See Hertz*, 559 U.S. at 81-82, 97 (stating that the petitioner's "unchallenged declaration" suggested that a company's headquarters were located in New Jersey when the declaration stated that the leadership of the company was located at corporate headquarters in New Jersey, "that its core executive and administrative functions … are carried out' there and 'to a lesser extent' in Oklahoma City, Oklahoma; and that its 'major administrative operations … are found' at those two locations"); *see Doe v. Prudential Ins. Co. of America*, 2010 WL 2326065, at *2 (E.D. Mo. June 8, 2010) (holding that a sparse affidavit was sufficient to establish the company's principal place of business when plaintiff produced no evidence that another state was the actual center of control); *see also Dasta v. Response Worldwide Ins. Co.*, 2010 WL 2902734 (W.D. Mo. July 20, 2010) (concluding that defendant's principal place of business was Illinois when defendant "submitted an affidavit stating that its officers direct, control, and coordinate its activities from its headquarters in Illinois").

Plaintiffs argue that these cases are inapposite because Defendants' declaration here has been contested. Plaintiffs contend that they contested Defendants' declaration by arguing that Forest Pharmaceuticals' principal place of business was located Missouri rather than New Jersey in November 2014. Where, as here, the documents presented by the defendant indicate a change in a company's principal place of business, and there is no evidence that the change is a sham, there is a presumption that the company's principal place of business has changed. *Hertz*, 559 U.S. at 81-82, 97; *see also Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 360 (3d Cir. 2013). The burden of production then shifts to the plaintiff to suggest that the defendant's evidence is insufficient.

While Plaintiffs have contested Defendants' contention that Forest Pharmaceuticals' principal place of business was located in New Jersey on November 4, 2014, they have done so by pointing to public documents supporting their contention that the company was being run out of Missouri at the time of the filing of the complaint, rather than by contesting the content of Mr. Meury's declarations. *See, i.e., Johnson*, 724 F.3d at 360 (distinguishing between evidence presented to support the plaintiff's argument, and evidence which contradicts that presented by the defendant). However, Plaintiffs' evidence does not shed light on the question of where Defendants exercised actual control over Forest Pharmaceuticals at the time of filing of the complaint. The Supreme Court's decision in *Hertz* makes clear that the correct inquiry in determining a company's principal place of business is where the company's nexus of control is located. The opinion went to great lengths to clarify that the public's perception of the

7

location of a company's nerve center is not what determines its principal place of business for jurisdictional purposes.  *See Hertz*, 559 U.S. at 96 ("if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York").

Plaintiffs' first exhibit reflects that as of January 2015, Forest Pharmaceuticals' address was listed as being in St. Louis on the Forest Pharmaceuticals website. Defendants argue that Forest Pharmaceuticals simply had not gotten around to updating the information by the time Plaintiffs visited the website in January.  In light of the *Hertz* decision, this delay is not fatal to Defendants' argument that Forest Pharmaceuticals' principal place of business was in New Jersey as of November 2014.  *Hertz*, 559 U.S. at 96.  In *Hertz*, the Supreme Court specifically noted that the public perception of a company's principal place of business was not determinative of the company's principal place of business.  *Id.* at 97.  Plaintiffs also argue that Forest Pharmaceuticals has substantial assets located in Missouri and that it is the epicenter of their sales support, operations, warehousing, sales distribution, educational items, and other promotional items.  However, Mr. Meury's second declaration states that these operations and the Forest Pharmaceuticals staff had largely been relocated out of Missouri by the time Plaintiffs filed their complaint on November 4.  Forest Pharmaceuticals' historic presence in Missouri is not determinative of their principal place of business if the nexus of the company's decision making was located elsewhere at the time Plaintiffs filed the complaint.

8

In response to Plaintiffs' second exhibit, showing that Forest Pharmaceuticals' address was still listed as Missouri on the company's 2004 SEC filing, Defendants argue that the representation was accurate when made over a decade ago. The Court agrees with Defendants that the representation made in excess of ten years ago has little, if any, bearing on Forest Pharmaceuticals' principal place of business today. Moreover, the Supreme Court noted in *Hertz* that neither public perception of a company's principal place of business nor a company's address in an SEC filing was sufficient proof of a company's principal place of business. *Id.* at 97. Therefore, Forest Pharmaceuticals' SEC filing is itself insufficient to establish the location of the company's principal place of business.

The address listed on the Lexapro label similarly does not establish that Forest Pharmaceuticals' principal place of business was located in Missouri in November 2014. First, Defendants do not contest that Forest Pharmaceuticals' principal place of business was still located in Missouri as of July 2014.[1] Moreover, like the address listed on the Forest Pharmaceuticals website, the fact that the address may have influenced the public's perception of Forest Pharmaceuticals' principal place of business is not determinative of the actual principal place of business if the company's nexus of control was located elsewhere in November 2014.

---

[1] Plaintiffs represent that this labeling revision occurred on October 31, 2014, just four days before Plaintiffs filed their complaint. Defendants stated in oral arguments that the revision was approved and submitted in July 2014, not October. Even if Defendants had approved the revision on October 31, 2014, the representation is not dispositive of the issue before the Court as it does not prove the location from which Forest Pharmaceuticals was controlled on November 4, 2014.

9

The case cited by Plaintiffs to support their contention that Defendants' declaration is contested and is insufficient to establish that New Jersey was Forest Pharmaceuticals' principal place of business in November 2014 is distinguishable. Plaintiffs rely on *Heckemeyer v. NRT Missouri, LLC* to support their argument that Forest Pharmaceuticals' SEC filing and address representations demonstrate that the company's nerve center was in Missouri in November 2014. 2013 WL 2250429, at *6-7 (E.D. Mo. May 22, 2013). In *Heckemeyer*, the Defendant submitted a declaration stating that Defendant's business was controlled by a list of officers from New Jersey. *Id.* at *6. In response, Plaintiffs submitted information from the Internet showing that some of the officers identified by Defendant actually held themselves out as officers of different business entities. *Id.* at *7. Here, Plaintiffs have presented no reason to doubt any of the information contained in Mr. Meury's declarations and have presented wholly independent evidence to contest the company's principal place of business. As the facts contained in the declarations have not been contested, the Court concludes that Defendants' declarations in this case are sufficient to meet their burden of establishing that Forest Pharmaceuticals' principal place of business was located in New Jersey on November 4, 2014.

In light of the evidence presented here, the Court concludes that Defendants have met their burden to show that Forest Pharmaceuticals' principal place of business was located in New Jersey on November 4, 2014, at the time of the filing of the complaint.[2]

---

[2] The Court notes that neither party requested an evidentiary hearing on this matter, which left the Court to decide the issue based on the evidence presented in the briefing.

Absent production of some evidence by Plaintiffs suggesting that the content of Mr. Meury's declarations is not true, Defendants have produced sufficient evidence for the Court to rely on in determining the company's nerve center. Mr. Meury's declarations reflect that Forest Pharmaceuticals' controlling officers were located in and directing the company out of New Jersey as of November 2014, making New Jersey Forest Pharmaceuticals' principal place of business. Therefore, there is complete diversity and the Court has subject matter jurisdiction over the case.

### III. Conclusion

For the reasons set forth above, Plaintiffs' motion to remand is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 28, 2015
Jefferson City, Missouri